## Commonwealth v. Blackwell

*Samuel J. Orr, 4th,* Assistant District Attorney, for Commonwealth.

*Warren R. Keck, 3rd,* for defendant.

STRANAHAN, P. J., September 7, 1971.—A motion for a new trial and in arrest of judgment is presently before the court following a jury finding that defendant was guilty of attempted burglary. Defendant herein sets forth two theories of law in support of his motion.

The first issue raised by defendant is whether the verdict was against the clear weight of the evidence. The facts in support of this contention are as follows.

The Commonwealth's first witness was Teressa Douthit, who testified that on the evening of March 8, 1970, at about 9:25 p.m., she was on duty at the desk of the Farrell Police Department, and that a light came on which indicated that the Levine burglar alarm had been set off. The Levine burglar alarm is a silent alarm; the only indication of a breaking being this light at the police station. She immediately dispatched the police to the scene and Officers Joseph Timko and William Mason responded to the call, being only one-half block from the scene of the reported burglary.

When the officers arrived at the scene, Officer Timko went around to the rear of the building, while Officer Mason covered the front. Approaching the rear of the building, Officer Timko heard a running noise. When he reached the rear of the building, Timko noticed that a window had been broken. In so doing, he shined a light which illuminated a portion of an adjoining building, which is a vacant building, but had apparently at one time been the apartment in which defendant lived.

Officer Timko saw a man crawling into the window of the adjacent building; this man later turned out to be defendant. Officer Mason then came to the rear of the building and he and Officer Timko took defendant into custody and took him to the police station.

Upon returning to the scene about 20 minutes later, during which time two other officers guarded the area, they discovered upon a search of the area a crescent wrench and a pair of work gloves in the vicinity of the adjacent building. The evidence further seems to be clear that although the Levine building was broken into, nothing was taken and defendant had nothing in his possession from the Levine building.

It is this court's opinion that the cumulative effect of the evidence was such as to warrant submission of the case to the jury.

The Commonwealth's case is based on circumstantial evidence. "The test of the sufficiency of the evidence, irrespective of whether it is direct or circumstantial, is whether accepting as true all of the evidence upon which, if believed, the jury could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime charged": Commonwealth v. Whiting, 409 Pa. 492, 494; 187 A. 2d 563, 564 (1963).

Furthermore, all of the evidence must be read in a

light most favorable to the Commonwealth, and the Commonwealth must be given the benefit of all reasonable inferences arising therefrom: Commonwealth v. Simpson, 436 Pa. 459; 260 A. 2d 751 (1970).

In the case of Commonwealth v. Wentzel, 360 Pa. 137 (1948), the court held:

"While none of the facts presented would be conclusive of his guilt when individually considered, yet there is no doubt in our minds that the evidence presented, when considered collectively, required that the case be submitted to the jury. . . . The requirement of the law is that in order to warrant a conviction the facts and circumstances proved must be of such character as to produce a moral certainty of the guilt of the accused beyond any reasonable doubt—not that they need be absolutely incompatible with his innocence—and that doubt is for the jury unless the evidence 'be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances'. . . . Furthermore, it is well settled that there is no general rule to determine the quantity of circumstantial evidence necessary to overcome the presumption of innocence and carry the case to the jury; this must be weighed by the trial judge."

In the instant case, appellant's mere presence on the scene subsequent to the commission of the crime, in absence of other evidence indicative of defendant's participation in the attempted burglary, would not warrant submission of the case to the jury. However, considering all the circumstances present at the time, it appears that the Commonwealth has met its burden of proof. The existing circumstances that lead to this conclusion are several.

First, we must consider the time of day. One does not generally climb through back windows at this time of

night looking for television equipment. Also, the police officers, after receiving word of a possible burglary, arrived at the scene in 15 or 20 seconds, having only one-half block to travel, and one of the officers heard someone running on broken glass as he approached the rear of the building. Furthermore, the officers found defendant 15 feet from the scene of the crime climbing into a window in an adjacent building, apparently in flight. "Flight is evidence of consciousness of guilt and, in connection with other proof may be the basis from which guilt is properly inferred": Commonwealth v. Hooe, 187 Pa. Superior Ct. 330 (1958).

Finally, the finding of a crescent wrench and gloves near the window in the adjacent building in which defendant was apprehended is another circumstance pointed toward guilt, especially since no blood was found at the scene indicating that the window was probably not broken with the bare hand.

All the circumstances, when considered together in a light most favorable to the Commonwealth, appear to have warranted the submission of the case to the jury.

In the case of Commonwealth v. Saby et al., 24 Lehigh Co. Law Journal 421 (1951), the court found in a case with a somewhat similar factual situation to the instant case that there were no grounds for a new trial and in arrest of judgment. In that case, defendant was found in the proximity of the scene of the crime, waiting in an automobile, in a position to observe the rear entrance of such place; plus burglary tools were found on the seat of the automobile by his side and a pair of gloves, harmless in themselves, but often used by burglars, was also found. There, the court held that there was a chain of circumstances pointing to the guilt of defendant beyond any reasonable doubt.

The second issue which defendant raises in his

motion is that the court erred by not declaring a mistrial when the assistant district attorney made improper remarks in his summation.

The events that occurred, as the court recalls them, and as the record indicates, commenced when the assistant district attorney in his closing argument indicated to the jury that this was a case by the Commonwealth of Pennsylvania against defendant. He then inquired with the logic born of assistant district attorneys as to who the Commonwealth was. This rhetorical question he answered by stating that the Commonwealth of Pennsylvania consisted of the taxpayers of Pennsylvania.

The public defender, who was representing defendant in this case, objected. He did not make a motion to declare a mistrial, nor did he offer at that time to place on the record what was said, but rather he chose merely to object.

The trial court did not wish to magnify this issue out of proportion, and, therefore, stated in response to the objection:

"Yes, that's improper argument. The Commonwealth of Pennsylvania is more than the taxpayers, it is the people who live in Pennsylvania, Mr. Orr. Let's get on with some other argument."

The court felt at that time that the argument had no effect on the jury, since it had not been developed. For the court to make a big issue out of what was said would merely create the impression with the jury that all of this was of some importance, which it obviously was not.

The interesting thing in addition to what was said was the fact that the public defender did not make a motion for a mistrial, nor did he ask the court to place on the record what had occurred.

After the court had concluded its charge and had

ruled on the various points for charge and had asked the trial counsel to take exceptions, the public defender then came to sidebar, and in the presence of the assistant district attorney asked to place on the record his recollection of what had occurred, and stated that the assistant district attorney had said, in part:

"You must be fair to the Commonwealth. Who is the Commonwealth? The people, the taxpayers. . . ."

Counsel are in agreement that an objection was made and the trial judge then corrected the assistant district attorney and headed him off in another direction.

The public defender then said: "We would take exception to that statement." The court pointed out that exceptions were probably not what the public defender meant, but rather he meant that he wished to make a motion for a mistrial. The public defender then indicated that he did move for a mistrial and the court denied the motion.

The situation that existed here is covered by Rule 1118 of the Rules of Criminal Procedure. This rule provides that the correct motion is now a motion to declare a mistrial, and that this motion must be made when the prejudicial event is disclosed. The rule further provides that once the motion is made the trial judge shall make his ruling a part of the record.

There is case law which deals with alleged prejudicial remarks made by a district attorney, and the manner in which this conduct shall be handled. These cases predate Rule 1118, and deal with motions to withdraw a juror, which are now known as motions for a mistrial.

In Commonwealth v. Mika, 317 Pa. 487, the court discussed the procedure that should be followed, and indicated that the objection to the conduct of the district attorney must be promptly made, and the request for the withdrawal of a juror should be made

at the time the event occurs, which procedure permits the court to place on the record, in the event that the court stenographer is not making a record at that time, the events which are the basis of the complaint.

This rule is actually nothing more than common sense, because if there has been prejudice it should be ruled upon by the court at that time in order to be effective.

In the present case, the defense counsel did not comply with Rule 1118, but merely objected to the statement made by the assistant district attorney, and the court, in substance, sustained the objection and asked the assistant district attorney to not pursue that argument any further, but rather to turn his attention to other matters. Since there was no motion for a mistrial, it is difficult to say what the court could have done otherwise. This is especially true because this particular aspect of the argument had only begun and the assistant district attorney had not as yet developed whatever may have been on his mind. At that stage the jury had not been prejudiced.

When the motion for a mistrial was subsequently made at the conclusion of the court's charge, it actually was too late for the court to handle it in any other manner than in which it was handled. The motion was not made in a timely manner, and the court again pointed out to counsel that the motion should be for a mistrial rather than merely taking exceptions to what the court had already said.

The duties of a district attorney are well established, as pointed out in Commonwealth v. Cicere, 282 Pa. 492, at page 495:

". . . the district attorney is a quasi-judicial officer, representing the Commonwealth, which seeks no victims, but only justice; that since he is invested with these grave responsibilities he should at all times

conduct the Commonwealth's case fairly, present it in an impartial manner and avoid seeking to influence the jury by arousing their prejudices."

While we realize that whether the Commonwealth of Pennsylvania is made up of the taxpayers is certainly irrelevant to any criminal issue that may have existed at the time of trial, we do not believe that the remark had any tendency to arouse the prejudices of the jury towards defendant. The court at the time the statement was made chose pretty much to ignore it and asked the district attorney to not continue this argument. We conclude that this was the best way to handle the matter, and that it did not in any way prejudice this defendant.

## ORDER

And now, September 7, 1971, the motion for a new trial and arrest of judgment is denied.